UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK RAYMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 20-cv-122-JED-FHM |
| AMERICAN MERCURY ) | |
| INSURANCE COMPANY, an ) | |
| Oklahoma Corporation, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,

R. Thompson Cooper, OBA No. 15746
Dawn M. Goeres, OBA No. 21923
ROBERSON, KOLKER, COOPER & GOERES, P.C.
16408 Muirfield Place
Edmond, Oklahoma 73013
Telephone:   405-606-3333
Facsimile:    405-606-3334
Email:         tom@rkcglaw.com
                    dawn@rkcglaw.com
**ATTORNEYS FOR DEFENDANT**

June 2, 2020

## INTRODUCTION

In its Motion to Dismiss, Defendant asserted that any claims Plaintiff could assert as a result of AMIC's filing of its Petition in Intervention in the underlying tort are barred because they were compulsory counterclaims he was required to raise in the underlying tort case. In his response brief [Doc.11], Plaintiff does not dispute this contention. Plaintiff has thus conceded this point.

But, in a creative attempt to avoid dismissal of his Complaint, Plaintiff takes a new approach. That is, Plaintiff asserts that AMIC's actions at the mediation of the underlying tort case constitute a completely separate cause of action, which stands alone from any claims he could have asserted as a result of AMIC's filing of its Petition in Intervention. Building on this newly-asserted theory, Plaintiff argues that because the mediation took place _after_ AMIC filed its Petition in Intervention, any claims he now asserts as a result of AMIC's actions did not exist when AMIC's Petition in Intervention was filed and, therefore, were not compulsory counterclaims.

Plaintiff confuses the concepts of a cause of action and a theory of liability. It is clear from the briefs filed by Plaintiff in the underlying action that he took the position – at that time – that AMIC's act of filing its Petition in Intervention breached its obligations under the insurance contract at issue and violated the duty of good faith and fair dealing. Pursuant to black-letter law, any alleged actions of AMIC at the mediation – which occurred only because AMIC had filed its Petition in Intervention – arose out of the same transaction or occurrence as AMIC's filing of its Petition in Intervention. As such, Plaintiff's entire Complaint should be dismissed due to his failure to raise these matters in a compulsory counterclaim in the underlying tort action.

Even if this Court accepts Plaintiff's characterization of AMIC's actions at the mediation as the basis of an entirely separate from any cause of action than those which purportedly arose from AMIC's filing of its Petition in Intervention, it is clear from the briefs filed by Plaintiff in the underlying tort action that he commingled AMIC's filing of its Petition in Intervention _and_ its actions at the mediation as a basis for allegations of AMIC's supposed breach of contract or bad

faith which he expressly argued in the context of that lawsuit. Simply put, Plaintiff was aware of this supposed separate cause of action before a final judgment was entered by the trial court in the underlying action. As such, Plaintiff could and should have long ago asserted – in the course of the underlying action – the claim that AMIC acted wrongfully at the mediation in the underlying tort action. Therefore, any such claims are barred by the principles of *res judicata*, and should be dismissed with prejudice.

## ARGUMENTS AND AUTHORITIES

Plaintiff presented no legal authority in response to AMIC's assertion that his claims are barred because they were required to be asserted as compulsory counterclaims in the underlying action. As such, he has tacitly admitted that any claims which existed at the time his Answer to AMIC's Petition in Intervention should have been (but wasn't) filed were required to be pled as compulsory counterclaims.

Instead, the arguments asserted by Plaintiff in his Response are, almost entirely, devoted to the merits of his claims. AMIC is not addressing the merits of Plaintiff's claims, as the merits are immaterial to the issue of whether dismissal is warranted. Plaintiff overlooks the irony of his arguments; the fact Plaintiff continues to assert the same arguments here as he did in the underlying action underscores precisely why Defendant's motion must be granted.

I. **ALL OF PLAINTIFF'S CLAIMS WERE REQUIRED TO BE ASSERTED AS COMPULSORY COUNTERCLAIMS IN THE UNDERLYING TORT ACTION AND, THEREFORE, MUST FAIL.**

   A. **Plaintiff Has Conceded Any Claims Arising from AMIC's Filing of Its Petition in Intervention Are Barred.**

Defendant's Motion focused, in large part, on the fact that Plaintiff's Complaint must be dismissed because he was required to assert the claims in his Complaint as compulsory counterclaims in the underlying tort action. In response to this argument, Plaintiff argued that 12

O.S. § 2013(A) only applies when "*a claim currently exists at the time the pleading is filed*." (*See* Plaintiff's Motion at Pages 28-29 of 30. Emphasis in original.) Plaintiff sets forth no fact or legal authority demonstrating any claims he had that arose from AMIC's assertion of its subrogation rights, as formally pled in its Petition in Intervention, are not barred. As such, Plaintiff has tacitly admitted any claims he has against AMIC arising from AMIC's action of filing its Petition in Intervention should be dismissed.

> **B.    Any Claims Plaintiff Alleges Arose from AMIC's Acts or Omissions at Mediation Arose out of AMIC's Filing of Its Petition in Intervention and, Therefore, Are Also Barred**.

After acknowledging (through his lack of objection) that any claims Plaintiff has that arose from AMIC's act of filing its Petition in Intervention should be dismissed, Plaintiff states his "allegations of bad faith and breach of contract against AMIC arise out of its conduct *at and after mediation* in August 2013 in asserting an interest in the Settlement Funds." (*Id.* at Page 25 of 27. Emphasis in original.) Plaintiff then asserts "[h]is claims did not exist at the time AMIC intervened in September 2012." (*Id.*)

Plaintiff's attempt to divorce AMIC's filing of its Petition in Intervention from its actions or inactions at mediation is a distinction without a difference. These are not two <u>separate</u> causes of action; they are multiple theories of liability arising from the <u>same</u> cause of action. Plaintiff seizes on a single sentence in Defendant's Motion – "[t]he only fact alleged by Plaintiff in support of his bad faith claim against AMIC is that it intervened in the underlying tort lawsuit and 'wrongfully asserted' an 'invalid and unreasonable subrogation interest[]'[1] – in his misguided attempt to characterize AMIC's filing of its Petition in Intervention and its acts at mediation as separate causes of action.

---

[1]*See* Plaintiff's Motion at Page 25 of 27, referring to a single sentence included in Defendant's Motion at Page 17 of 23.

3

AMIC's filing of its Petition in Intervention was the <u>precipitating action</u> from which <u>all claims</u> asserted by Plaintiff in his Complaint flow. But for the fact AMIC filed its Petition in Intervention, in which it formally asserted in the context of the underlying tort claim its right of subrogation, <u>it would not have been present at the mediation</u>. As such, AMIC's filing of its Petition in Intervention is the "only fact alleged by Plaintiff" which matters for purposes of its request that Plaintiff's Complaint be dismissed.

As noted in Defendant's Motion, "A counterclaim is compulsory if: (1) the issues of fact and law raised by the principal claim and the counterclaim are largely the same; (2) *res judicata* would bar a subsequent suit on defendant's claim; (3) the same evidence supports or refutes the principal claim and the counterclaim; and, (4) there is a logical relationship between the claim and counterclaim." *FDIC v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir.1994) (italics emphasis in original) (citation omitted). The briefs Plaintiff filed in the underlying tort action – at the trial court level – demonstrate he knew at that time that AMIC's action of filing its Petition in Intervention and its alleged actions or inactions at the mediation are all part and parcel of a single compulsory counterclaim he was required to assert in the underlying tort action.

Plaintiff's attempt to characterize AMIC's actions at **mediation** in the underlying tort action (*i.e.*, <u>continuing</u> to pursue its subrogation claim) as something separate and apart from its earlier action of **filing the Petition in Intervention** (*i.e.*, kickstarting its assertion of its subrogation claim in the tort action) is belied by his own statements made in filings in tort case (in both the district court as well as the appellate courts).

The following are just a few examples:

- ■ In the underlying tort case, AMIC moved to determine the allocation of the settlement funds. In Plaintiff's October 23, 2013, Response to AMIC's motion in that regard ([Doc.7-10, sealed Exhibit 10 to Defendant's Motion to Dismiss), Plaintiff was not only critical of AMIC's assertion of a subrogation interest, but made it clear that his criticism was present from the

       moment AMIC first asserted its subrogation claim, which necessarily would have included the subsequent attendance at mediation where the subrogation claim continued to be asserted. (*See* [Doc.7-10] at pp. 2, 11-12, 13, and 16.)[2]

- In his January 6, 2016, Reply Brief on appeal in case no. DF-113,884 (*See* Exhibit 24 to AMIC's Motion to Dismiss, [Doc.7-24]), Plaintiff admits that he believed, at mediation, that AMIC's actions at that time were improper. Plaintiff's brief reads, "AMIC demanded subrogation without substitution after a settlement offer was made by the tortfeasor, in violation of section 3636. That is, during mediation Blue Knight offered Raymond X to resolve the claim. That, in addition to the UM benefits already paid ("X + 500k"), represent an amount that Raymond was agreeable to accepting. By demanding to be reimbursed from that offer, AMIC essentially said that Raymond's claim was worth, at most, only X instead of X + 500k. Pursuant to section 3636(F), AMIC could have substituted payment of X to Raymond, which would have given him the benefit of the tortfeasor's offer but allowed AMIC to pursue Blue Knight for the full amount of Raymond's claim (X + 500k). AMIC could have asserted its right to have sixty (60) days to decide whether it would waive or substitute and the parties would have left mediation with a tentative settlement agreement. But it did not. Instead, AMIC refused to waive subrogation and refused to substitute payment of Blue Knight's offer of X, leaving Raymond with the choices of either rejecting a settlement offer he wanted (and needed) to accept or agreeing that AMIC's alleged interest would have to be resolved post-settlement and satisfied from the settlement proceeds." (*See* [Doc.7-24], Pages 10-11 of 23.)

- In his October 19, 2016 Petition for Certiorari (case no. 113, 894; Exhibit 26 to AMIC's Motion to Dismiss, [Doc.7-26]), Plaintiff again admits that he believed, at mediation, that AMIC's actions at that time were improper. Plaintiff's brief reads, "Mercury was present at mediation and claimed that it was entitled to be reimbursed for the full amount it paid to Raymond (i.e., $500,000, half of its UM limits). Raymond disputed Mercury's position . . . ." (*See* [Doc.26] at Page 3 of 32.)

---

[2]Because Exhibit 10 to AMIC's Motion to Dismiss was submitted under seal, AMIC will, out of an abundance of caution, refrain from quoting from said exhibit verbatim, even though the portions to which AMIC calls the court's attention are not the "confidential" portions of the brief.

5

**II.    IF PLAINTIFF IS CORRECT THAT HIS NEWLY-ASSERTED CLAIM (THAT AMIC'S ACTIONS AT MEDIATION IN THE UNDERLYING TORT CASE GIVE RISE TO A SEPARATE CAUSE OF ACTION THAT IS NOT BARRED AS A COMPULSORY COUNTERCLAIM), SAID CAUSE OF ACTION IS NONETHELESS BARRED BY THE PRINCIPLES OF *RES JUDICATA*.**

Even if this Court accepts that AMIC's actions during the mediation constitute a wholly separate cause of action from the filing of its Petition in Intervention, any claims Plaintiff could assert as a result of the mediation are barred by the principles of *res judicata*. As stated by the Tenth Circuit, interpreting and applying Oklahoma law:

> Oklahoma follows the familiar doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Under the former doctrine, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or <u>could have been raised</u> *in that action*."

*Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir.1997) (italics emphasis in original, underline emphasis added). The principle of *res judicata* is also known as claim preclusion. *McDaneld v. Lynn Hickey Dodge, Inc.*, 979 P.2d 252, 255-256. Also pursuant to Oklahoma law:

> The elements of claim preclusion are: 1) identity of subject matter and the parties or their privies in the prior litigation; 2) a court of competent jurisdiction heard the prior litigation; and 3) the judgment rendered in the prior litigation must have been a judgment on the merits of the case and not upon purely technical grounds.

*Robinson v. Texhoma Limestone, Inc.*, 100 P.3d 673, FN11 (Okla.2004) (citation omitted).

On the date of the mediation – August 13, 2013 – Plaintiff knew he believed AMIC's actions or inactions during that event constituted a breach of the insurance contract and bad faith. AMIC did not file its motion seeking an allocation of the settlement that was reached at the mediation until eight weeks later, on September 30, 2013. Three weeks after that, on October 23, 2013, Plaintiff filed his response to AMIC's request for allocation of the settlement reached at mediation – and it is patently clear from that brief Plaintiff believed AMIC's actions or inactions <u>at the mediation</u> breached the insurance contract and its duty of good faith.

6

On May 6, 2014, the trial court in the underlying tort action asked the parties to submit supplemental briefing on the issue of the settlement allocation. (*See* [Doc.7-5] at Pages 11-12 of 16.) **Three days later**, on May 9, 2014, Plaintiff his separate Tulsa County action (which he seeks to reanimate in this action). The Petition filed by Plaintiff in Tulsa County and the Complaint he filed in this Court are, substantively, exactly the same. (C*ompare* [Doc.7-14] to [Doc.2].) In other words, at the time Plaintiff filed his Petition against AMIC in Tulsa County, no final judgment had been entered in the underlying tort action. Nearly four months after Plaintiff filed his Petition in Tulsa County, on August 29, 2014, the trial court in the underlying action entered its order finding in AMIC's favor on its request for allocation of the settlement funds. The underlying tort case was not dismissed until eight months after that, on March 26, 2015.

It is patently clear Plaintiff could have raised his assertion that AMIC breached the insurance contract and committed bad faith in the underlying tort action. *Fox*, *supra*, at 458-459 (holding that the plaintiffs in that matter did not "demonstrate[] that the Oklahoma court would not have heard their RICO claims," and, as such, those claims were barred for failure to assert them in that matter). There is also no question (1) Plaintiff and AMIC were privies in the underlying tort action, (2) the Harper County court was a court of competent jurisdiction, and (3) the judgment rendered by the Oklahoma Supreme Court in the underlying tort litigation was a judgment on the merits of the case.

As stated by the Oklahoma Supreme Court:

> The purpose of a compulsory counterclaim, as well as of claim preclusion, is to prevent multiplicity of litigation over related claims. Both doctrines are based largely on a policy of conserving judicial resources by avoiding needless relitigation of closely related issues. Judicial economy and efficiency in the system are promoted when all issues related to the same transaction (or occurrence) can be resolved in the same case.

*McDaneld* at 256 (footnote omitted). For all of the reasons set forth in Defendant's Motion to Dismiss, the principle of *res judicata* bars Plaintiff's claims that AMIC breached the insurance

7

contract at issue and the duty of good faith and fair dealing as a result of its alleged actions or inactions at a mediation which occurred in the course of the underlying litigation <u>more than a year before</u> that court entered the ruling which forms the basis of Plaintiff's Complaint.  As such, Defendant respectfully submits Plaintiff's Complaint must be dismissed.

## CONCLUSION

No amount of creative pleading, and certainly no discovery, is going to change the outcome here.  All of Plaintiff's complaints about AMIC's actions in this case arise out of AMIC's assertion of its subrogation interest, and Plaintiff has been vocal about those criticisms since 2013, well prior to the filing of the Petition in Intervention.  Defendant is entitled to a dismissal.

Respectfully submitted,

s/ Dawn M. Goeres
R. Thompson Cooper, OBA No. 15746
Dawn M. Goeres, OBA No. 21923
ROBERSON, KOLKER, COOPER & GOERES, P.C.
16408 Muirfield Place
Edmond, Oklahoma 73013
Telephone:   405-606-3333
Facsimile:    405-606-3334
Email:          tom@rkcglaw.com
                    dawn@rkcglaw.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II

s/ Dawn M. Goeres
For the Firm