UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK RAYMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 20-CV-122-JED-CDL |
| AMERICAN MERCURY | ) |
| INSURANCE COMPANY, an | ) |
| Oklahoma Corporation, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

R. Thompson Cooper, OBA No. 15746
Dawn M. Goeres, OBA No. 21923
ROBERSON, KOLKER, COOPER & GOERES, P.C.
16408 Muirfield Place
Edmond, Oklahoma 73013
Telephone:     405-606-3333
Facsimile:      405-606-3334
Email:            tom@rkcglaw.com
                      dawn@rkcglaw.com
**ATTORNEYS FOR DEFENDANT**

May 27, 2021

Defendant, American Mercury Insurance Company ("AMIC"), pursuant to FED.R.CIV.P. 26(b), 26(g)(1)(B), 33(b)(4), 34(b)(1)(A), 34(b)(2)(B), and LCvR 37-2(d), respectfully submits the following response to Plaintiff, Mark Raymond's ("Plaintiff's") Motion to Compel.[1]

## CERTIFICATION OF MEET-AND-CONFER[2]

On Friday, April 30, 2021, counsel for the parties in this matter met and conferred in accordance with the requirements of LCvR 37-1. R. Thompson Cooper and Dawn M. Goeres participated on behalf of AMIC, and Larry Murphy and Dustin Vanderhoof participated on behalf of Plaintiff. As the offices of these attorneys are more than 30 miles apart, the conference took place *via* telephone.

During the discovery conference, counsel for Plaintiff and counsel for AMIC discussed the fact that AMIC, in its responses to Plaintiff's written discovery, had asserted various objections and had not provided substantive discovery responses. Counsel for AMIC pointed out that the discovery requests issued by Plaintiff sought information that is not clearly relevant to Plaintiff's claim against AMIC, as Plaintiff has affirmatively represented to the Court that his claim against AMIC did not arise until AMIC engaged in the litigation conduct of standing on its subrogation rights at the August 21, 2013, mediation that took place in the state court lawsuit of *Vonda Raymond, Guardian of Mark Raymond, an incapacitated adult v. Larry Bedell, an Individual and Blueknight Energy Partners, LP, a Foreign Corporation*, In the District Court of Woodward County, State of Oklahoma, Case No. CJ-2012-70 ["the underlying tort case"]. Counsel for AMIC also advised counsel for Plaintiff that, as Plaintiff has affirmatively represented to the Court that his claims against AMIC did not arise

---

[1] *See* [Dkt.27].

[2] The undersigned, as an attendee of the discovery conference and officer of the Court, and in accordance with FED.R.CIV.P. 11, certifies the accuracy of the information concerning the discovery conference that took place on April 30, 2021 set forth in this section.

until the August 21, 2013, mediation, many of Plaintiff's discovery requests were overly broad in temporal scope. In addition, AMIC's counsel advised that as Plaintiff has affirmatively represented to the Court that his claims against AMIC are based on AMIC's litigation conduct of standing on its subrogation rights at the August 21, 2013, mediation that took place during the litigation of the underlying tort case, much (if not most) of the information at issue is subject to the attorney-client and/or work product privileges.

Plaintiff's counsel advised they considered AMIC's objections to be "boilerplate" in nature, and AMIC's counsel explained that many of AMIC's responses set forth the same or similar facts or cited the same or similar portions of pleadings or briefs as the basis for AMIC's objections, but took pains to explain in each response how that information – in the context of each, separate discovery request – specifically supported AMIC's objections. Plaintiff's counsel did not identify any other basis for Plaintiff's dispute with AMIC's objections to Plaintiff's written discovery.

Counsel for AMIC advised counsel for Plaintiff that if Plaintiff would issue discovery requests that were narrowed in scope so that the relevance of the information sought was readily apparent to the claim Plaintiff has affirmatively informed the Court he is asserting against AMIC – that AMIC breached the insurance contract at issue and the duty of good faith and fair dealing by engaging in the litigation conduct of standing on its subrogation rights at the August 21, 2013, mediation that took place in the underlying tort case[3] – then AMIC would respond to those narrowed requests with substantive responses to the extent the requests were not objectionable and would also, if the information sought was subject to the attorney-client and/or work product privileges, provide a privilege log.

---

[3]Plaintiff has made this affirmative representation in the context of his Response to AMIC's Motion to Dismiss. (*See* [Dkt.11] at pp.28-29 of 31.)

2

Plaintiff's counsel advised Plaintiff was unwilling to narrow any of Plaintiff's written discovery requests in the manner suggested by AMIC's counsel. When AMIC's counsel asked for an explanation of this refusal, Plaintiff's counsel advised that even though Plaintiff has affirmatively narrowed the scope of his claims against AMIC to AMIC's litigation conduct of standing on its subrogation rights at the August 21, 2013, mediation that took place in the underlying tort case, Plaintiff is of the opinion that everything requested in Plaintiff's discovery requests is relevant to this affirmatively-narrowed claim. As such, AMIC's counsel advised Plaintiff's counsel that AMIC (in accordance with the authority discussed below) would be unable to provide partial responses to Plaintiff's discovery requests for the specific reasons set forth in AMIC's objections.

## INTRODUCTION

Plaintiff did not "include a verbatim recitation of each interrogatory, request, answer, response and objection which is the subject of" his Motion to Compel. This is required by LCvR 37-2(d), as it is impossible for *any* court to rule on a discovery motion without being specifically notified of the issues presented by any discovery dispute. Plaintiff tries to avoid this requirement by suggesting AMIC's objections to his written discovery requests were "boilerplate" in nature – without putting a single one of AMIC's discovery responses before this Court. In fact, the allegedly "boilerplate" nature of AMIC's objections is the only basis on which Plaintiff argues AMIC should be compelled to answer written discovery. (*See* [Dkt.27].)

What Plaintiff overlooks is that – according to his own affirmative representations to the Court concerning his claims against AMIC– he cannot meet his burden of demonstrating the relevance of the information sought by his discovery requests is readily apparent. In addition, even a cursory reading of AMIC's objections demonstrates they are not "boilerplate." Plaintiff claims

3

AMIC, in its objections to Plaintiff's discovery requests, "cit[ed] its Motion to Dismiss."[4] AMIC did not cite its Motion to Dismiss in support of its objections[5] – it cited Plaintiff's Response to that Motion to Dismiss, in which Plaintiff asserted his claims should not be dismissed as compulsory counterclaims he was required to file in the underlying state tort case on the following basis:

> AMIC argues in its motion that Plaintiff's claims herein are barred by Oklahoma's compulsory counterclaim law, in that they were required to be asserted at the time AMIC filed its petition for intervention in the Third-Party Lawsuit. "For a counterclaim to be compulsory under [12 O.S.] § 2013(A), it must arise out of the 'same transaction and occurrence' as the subject matter of the opposing party's claim." *Valley View Angus Ranch, Inc. v. Duke Energy Field Services*, Inc., 497 F.3d 1096, 1103 (10th Cir. 2007). Logically, the law of compulsory counterclaims only compels a litigant to countersue, in certain situations, *where a claim currently exists at the time the pleading is filed*. 12 O.S. § 2013(A) (emphasis added). Here, Plaintiff's allegations of bad faith and breach of contract against AMIC arise out of its conduct *at and after mediation* in August 2013 in asserting an interest in the Settlement Funds. His claims *did not exist* at the time AMIC intervened in September 2012. There *were* no Settlement Funds or Settlement Offer for AMIC to interfere with at the time of its intervention. It was not until the Tortfeasor made a Settlement Offer at mediation in excess of the liability limits, and AMIC interfered with that offer and asserted an interest in the Settlement Funds in the amount of $500,000 without substituting payment or consideration of contribution, that Plaintiff's claims asserted in his Complaint arose.
>
> AMIC argues that its mere *assertion* of a purported right of subrogation in the Third-Party Lawsuit, before any Settlement Offer was ever made, gave rise to Plaintiff's claims that AMIC breached its duty of good faith and fair dealing by interfering with Plaintiff's ability to settle his claims against the Tortfeasor without substitution or contribution. But it is simply incorrect that the "only fact" alleged by Plaintiff in support of his bad faith claim against AMIC is its act of intervening. AMIC's argument in this regard is the result of its improperly narrow framing of the issues in this case. As discussed above, the question in this case is whether it was reasonable for

---

[4] *See* [Dkt.27] at page 3 of 7.

[5] *See* [Dkt.27-4].

4

> AMIC to assert an interest in the Settlement Funds *at and after mediation*, considering all the relevant facts and circumstances *as they existed at that time*. Those facts and circumstances did not exist until mediation, and AMIC did not breach its duty of good faith and fair dealing until it actually interfered with a Settlement Offer Plaintiff wanted to accept. Thus, Plaintiff's claims herein did not exist at the time of AMIC's intervention and cannot fall with the rule of compulsory counterclaims.

(*See* [Dkt.11] at pp.28-29 of 31, emphasis in original.)

Each of AMIC's objections includes the factual basis on which those objections are based, and many of those objections are based on this affirmative representation Plaintiff made to the Court in his Response to AMIC's Motion to Dismiss. Many of the facts demonstrating each of Plaintiff's written discovery requests are overly broad, unduly burdensome, oppressive, harassing, and seek information that is clearly not relevant and protected by the attorney-client and/or work product privileges – in the context of his affirmative representation to the Court that his claims against AMIC did not arise until AMIC engaged in the litigation conduct of standing on its subrogation rights during the August 21, 2013, mediation in the underlying tort case – are similar. AMIC provided a thorough explanation of and basis for each of its objections to each of Plaintiff's discovery requests.

As it is Plaintiff's burden to first demonstrate the relevance of the information sought in any discovery request that is at issue in his Motion to Compel is readily apparent, and has Plaintiff has failed to even identify for this Court the discovery requests at issue, AMIC respectfully submits this Court should deny Plaintiff's Motion to Compel.

## **ARGUMENTS AND AUTHORITIES**

AMIC acknowledges that the concept of relevance is a broad one. Plaintiff, however, bears the initial burden of demonstrating the relevance of the information sought is readily apparent. *Barton v. Tomacek*, 2012 WL 4735927, *4 (N.D.Okla.) ("When the relevance is not readily apparent, the party seeking the discovery has the burden to show the relevance of the information requested.")

5

(citation omitted). As stated by Judge Eagan of the United States District Court for the Northern District of Oklahoma:

> While the concept of relevance for discovery purposes is quite broad, Rule 26 does not authorize unlimited discovery. *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir.2010). The mere fact that a plaintiff offers a "broad theory of the case" does not automatically justify equally broad discovery, "unless the discovery is relevant to the plaintiff's actual claims or defenses." *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1193.

*Id.*

Judge Eagan's well-reasoned analysis of the scope of relevance was cited in another Northern District of Oklahoma case, which held:

> Courts should prevent speculative "fishing expeditions," whereby a party "pleads its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000). This type of fishing expedition is an abuse of the judicial process. *Id.*

*Reibert v. CSAA Fire And Cas. Ins. Co.*, 2018 WL 279348, *4 (N.D.Okla.)

While it is not AMIC's responsibility to place the discovery requests that are at issue before this Court, the following examples show why Plaintiff cannot demonstrate (1) the relevance of the information sought in his discovery requests is readily apparent when considered in the context of his affirmative representation to the Court regarding his claims against AMIC, as set forth in his Response to AMIC's Motion to Dismiss (and above), and (2) that AMIC's objections were "boilerplate" in nature:

> **INTERROGATORY NO. 2.** Please state the name and job title of every person who participated in:
> a. The decision(s) whether to pay Plaintiff's claim;
> b. The decision(s) to seek subrogation from the tortfeasors from the Underlying Accident;

6

    c.        The decision(s) to intervene in *Vonda Raymond et al. v. Larry Bedell et al.*, Case No. CJ-2012-00013, Harper County District Court.

**ANSWER:** AMIC objects to Plaintiff's request for this information, as Plaintiff's claims are barred because they are compulsory counterclaims that Plaintiff was required to assert in the underlying tort case and by the principle of *res judicata*. Plaintiff's discovery requests are intended for the purposes of oppression and annoyance, as they seek information which Plaintiff, himself, has now admitted is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Further, as more fully set forth below, this interrogatory is overly broad and unduly burdensome in that it is not temporally limited to the time period Plaintiff now claims is the only time period during which any alleged act or omission of AMIC occurred that form the basis of his cause of action: on and after August 21, 2013. In addition, as worded, the scope of this interrogatory seeks information which may be protected by the attorney-client and/or work product privileges.

    The following facts are undisputed by Plaintiff: (1) the underlying accident occurred on July 6, 2012; (2) at the time of the underlying accident, Plaintiff was insured under a policy of insurance issued by AMIC to Guy's Seed which provided uninsured/underinsured motorist ("UM/UIM") coverage with a limit of $1,000,000; (3) Plaintiff's UM claim was reported to AMIC on July 9, 2012; (4) on September 24, 2012, AMIC tendered the full $1,000,000 UM/UIM limits provided by its policy to the representative of non-party William Cole Taylor's estate ("the Taylor Estate") and Plaintiff, and at Plaintiff's direction, this $1,000,000 was divided equally between Plaintiff and the Taylor Estate, and (5) "AMIC tendered payment in accordance with the parties' agreement," resulting in tender of $500,000 to Plaintiff pursuant to AMIC's September 12, 2012, tender. (*Compare* [Doc.7] at pp.6-7 of 23, ¶¶ 1, 2, 3, and 8 *to* [Doc.11] at p.7 of 31, ¶¶ 1-2.)

    AMIC moved to dismiss Plaintiff's lawsuit on the grounds his claims are either compulsory counterclaims that should have been asserted in the underlying tort case and/or are barred by the doctrine of *res judicata*. (*See* [Doc.7].) In response, Plaintiff affirmatively asserted this lawsuit is based on AMIC's litigation conduct at and after the August 21, 2013, mediation that took place in the underlying tort case. (*See* [Doc.11] at pp.28-29 of 31. "Here, Plaintiff's allegations of bad faith and breach of contract against AMIC arise out of its conduct *at and after mediation* in August 2013 in asserting an interest in the Settlement Funds." Emphasis in original.) Plaintiff, in his Response to Defendant's Motion to Dismiss, stated as follows:

> Here, Plaintiff's allegations of bad faith and breach of contract against AMIC arise out of its conduct *at and after mediation* in August 2013 in asserting an interest in the Settlement Funds. His claims *did not exist* at the time AMIC intervened in September 2012. There *were* no Settlement Funds or Settlement Offer for AMIC to interfere *with* at the time of its intervention. It was not until the Tortfeasor made a Settlement Offer at mediation in excess of the liability limits, and

7

> AMIC interfered with that offer and asserted an interest in the Settlement Funds in the amount of $500,000 without substituting payment or consideration of contribution, that Plaintiff's claims asserted in his Complaint arose.
>
> \* \* \*
>
> ... As discussed above, the question in this case is whether it was *reasonable* for AMIC to assert an interest in the Settlement Funds *at and after mediation*, considering all the relevant facts and circumstances *as they existed at that time*. Those facts and circumstances did not exist until mediation, and AMIC did not breach its duty of good faith and fair dealing until it actually interfered with a Settlement Offer Plaintiff wanted to accept. Thus, Plaintiff's claims herein did not exist at the time of AMIC's intervention and cannot fall with the rule of compulsory counterclaims.

(*See* [Doc.11] at pp.28-29 of 31, emphasis in original.)

AMIC maintains Plaintiff's attempt to characterize AMIC's acts at and after the August 21, 2013, mediation as a separate cause of action is flawed and should be rejected by the Court. (*See* [Docs. 7 and18].) In the alternative, AMIC maintains that if the Court does find its litigation conduct at and after the August 21, 2013, mediation can form the basis of a separate cause of action, that cause of action should be barred under the principle of *res judicata*. *Id.* Plaintiff, however, is attempting to avoid dismissal by affirmatively arguing he had no cause of action at the time AMI filed its Petition in Intervention and Plaintiff's cause of action did not arise until at and after the August 21, 2013, mediation. Despite this, Plaintiff now seeks discovery concerning information which – according to the theory he has espoused in the hopes of avoiding dismissal – is clearly neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and is beyond the scope of the time period Plaintiff now claims is the only time period at issue: on and after August 21, 2013.

There is no dispute AMIC paid Plaintiff's UM claim and by Plaintiff's own argument, the tender of UM benefits by AMIC on September 24, 2012, is not at issue in this matter. According to Plaintiff, AMIC's decision to seek subrogation is not at issue, nor is AMIC's decision to file its Petition in Intervention. Plaintiff has affirmatively argued to the Court that the only matters at issue in this lawsuit are AMIC's litigation conduct at and after the August 13, 2013, mediation. As such, under the theory Plaintiff has put forth in order to survive dismissal, the relevant time period begins on August 21, 2013. This interrogatory is not temporally limited to a time period "at and after" the August 21, 2013, mediation. Further, none of the information sought in this interrogatory is relevant to the issue of AMIC's litigation conduct at and after the August 21, 2013, mediation, nor can this information lead to the discovery of admissible evidence concerning AMIC's litigation conduct at and after the August 21, 2013, mediation. This interrogatory is clearly designed to harass

8

and oppress AMIC, as it is not even geared toward the discovery of the information Plaintiff has argued is the information that forms the basis of this lawsuit. It is unduly burdensome in that answering it will required AMIC to expend effort, time, and expense in identifying information that – under Plaintiff's own theory – is beyond the temporal scope of the relevant alleged actions and/or omissions and is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 5:**   Please state the name and address of each person known by Defendant to have any knowledge whatsoever of matters pertinent to the allegations in Plaintiff's Complaint and the subject matter of such knowledge.

**ANSWER:**   AMIC objects to Plaintiff's request for this information, as Plaintiff's claims are barred in that they are compulsory counterclaims that Plaintiff was required to assert in the underlying tort case and are barred by the principle of *res judicata*. Further, AMIC objects to this interrogatory in that it seeks information concerning the allegations in Plaintiff's Complaint despite the fact Plaintiff has, in subsequent briefing, asserted the allegations in his Complaint do not form the basis of his cause of action.

Plaintiff's Complaint include the following "allegations" against AMIC:

11. Plaintiff requested Defendant Mercury Insurance pay benefits under the UM policy in accordance with *Burch v. Allstate*, 1998 OK 129, 977 P.2d 1057, as the value of Plaintiffs claim clearly exceeded the tortfeasor's primary liability policy limits.

12. Pursuant to Plaintiffs Burch request, Defendant Mercury Insurance paid Plaintiff $500,000 of the $1,000,000 available under the applicable UM policy but purported to "retain" a right to subrogate against any funds Plaintiff might receive from the tortfeasor, BlueKnight, or its insurance carriers, even though the same is legally inconsistent with a Burch payment.

13. When Plaintiff was unable to resolve his claim with the tortfeasors he filed suit, resulting in the case *Raymond v. Larry Bedell and BlueKnight Energy Partners, LP*, CJ-2012-70, Woodward County Court ( the case was later transferred to Harper County, resulting in case number CJ-2012-13) (hereinafter "Third-Party Case").

14. Defendant Mercury Insurance intervened in the Third-Party Case, alleging that 36 O.S. § 3636(F) created a right of subrogation entitling it to recover the payments it made to Plaintiff pursuant to *Burch*.

9

15. Plaintiff and his counsel vigorously litigated the Third-Party Case and the case proceeded to mediation. Defendant Mercury Insurance was present at mediation and insisted that it was entitled to reimbursement of the $500,000 it paid to Plaintiff.

16. Due to Plaintiffs vigorous litigation efforts, the tortfeasors agreed to a settlement (hereinafter "the Settlement Agreement"), the terms of which are subject to a confidentiality agreement.

17. Because Defendant Mercury Insurance intervened in the Third-Party Case and wrongfully asserted a subrogation interest, the Settlement Agreement could not be finalized without Defendant Mercury Insurance's approval. Although Plaintiff disputed that Defendant Mercury Insurance had any valid subrogation interest, Plaintiff had no reasonable alternative but to acquiesce to Defendant Mercury Insurance's demand that the entire $500,000 be held in the trust account of Defendant Mercury Insurance's law firm so that the Settlement Agreement could be finalized.

18. Thereafter, Defendant Mercury Insurance filed a Motion to Determine Allocation of Settlement Funds contending that it was entitled to repayment of its full UM payment to Plaintiff from the Settlement Agreement and asserting that it had no obligation to contribute to the costs or attorney fees incurred in facilitating the Settlement Agreement because it was represented by separate counsel.

19. As a result of Defendant Mercury Insurance's actions in asserting an invalid and unreasonable subrogation interest, Plaintiff was forced to go without the benefit of that part of the Settlement Agreement.

20. On or about April 6, 2015, the Third-Party Lawsuit resulted in an Order adverse to Plaintiff and allowing Defendant Mercury Insurance to wrongfully retain the $500,000.

21. On or about May 1, 2015, Plaintiff was forced to appeal the adverse ruling in favor of Defendant Mercury Insurance.

22. On or about October 10, 2017, The Supreme Court of Oklahoma reversed the decision made by the trial court in the Third-Party Lawsuit. *See Raymond v. Taylor*, 2017 OK 80, 412 P.3d 1141.

* * *

28. Defendant Mercury Insurance breached its contract of insurance by wrongfully and unreasonably asserting a subrogation interest against funds obtained by the Plaintiff, interfering in Plaintiffs ability to unilaterally resolve his claims against BlueKnight, and depriving Plaintiff of the $500,000.

29. Such actions constitute a breach of contract of said insurance policy and the Plaintiff is entitled to a judgment against Defendant Mercury Insurance for the personal injuries sustained as a result of Defendant Mercury Insurance's breach, together with attorney's fees, and interest.

* * *

31. In its handling of Plaintiffs claim for benefits under the insurance policy, including but not limited to the acts and manner in which Defendant Mercury Insurance asserted its purported subrogation interest and intervened in the Third Party Case, and as a matter of routine practice in handling similar claims, Defendant Mercury Insurance breached its duty to deal fairly and in good faith towards Plaintiff and others.

32. As a direct result of Defendant Mercury Insurance's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered the loss of the insurance policy benefits, mental and emotional distress, anxiety, embarrassment, and financial hardship, all in an amount in excess of $75,000.00.

(*See* [Doc.2].)

Plaintiff's Complaint expressly alleges AMIC breached the insurance contract at issue and its duty of good faith and fair dealing when it "asserted its purported subrogation interest and intervened in the Third Party Case ... [.]" (*Id.*) Then, in the only two paragraphs in Plaintiff's Response to AMIC's Motion to Dismiss that addressed the issue of whether his claims are barred because they were compulsory counterclaims that should have been raised in the underlying accident, Plaintiff affirmatively represented to the Court as follows:

> AMIC argues in its motion that Plaintiff's claims herein are barred by Oklahoma's compulsory counterclaim law, in that they were required to be asserted at the time AMIC filed its petition for intervention in

11

> the Third-Party Lawsuit. "For a counterclaim to be compulsory under [12 O.S.] § 2013(A), it must arise out of the 'same transaction and occurrence' as the subject matter of the opposing party's claim." *Valley View Angus Ranch, Inc. v. Duke Energy Field Services*, Inc., 497 F.3d 1096, 1103 (10th Cir. 2007). Logically, the law of compulsory counterclaims only compels a litigant to countersue, in certain situations, *where a claim currently exists at the time the pleading is filed*. 12 O.S. § 2013(A) (emphasis added). Here, Plaintiff's allegations of bad faith and breach of contract against AMIC arise out of its conduct *at and after mediation* in August 2013 in asserting an interest in the Settlement Funds. His claims *did not exist* at the time AMIC intervened in September 2012. There *were* no Settlement Funds or Settlement Offer for AMIC to interfere with at the time of its intervention. It was not until the Tortfeasor made a Settlement Offer at mediation in excess of the liability limits, and AMIC interfered with that offer and asserted an interest in the Settlement Funds in the amount of $500,000 without substituting payment or consideration of contribution, that Plaintiff's claims asserted in his Complaint arose.
>
> AMIC argues that its mere *assertion* of a purported right of subrogation in the Third-Party Lawsuit, before any Settlement Offer was ever made, gave rise to Plaintiff's claims that AMIC breached its duty of good faith and fair dealing by interfering with Plaintiff's ability to settle his claims against the Tortfeasor without substitution or contribution. But it is simply incorrect that the "only fact" alleged by Plaintiff in support of his bad faith claim against AMIC is its act of intervening. AMIC's argument in this regard is the result of its improperly narrow framing of the issues in this case. As discussed above, the question in this case is whether it was reasonable for AMIC to assert an interest in the Settlement Funds *at and after mediation*, considering all the relevant facts and circumstances *as they existed at that time*. Those facts and circumstances did not exist until mediation, and AMIC did not breach its duty of good faith and fair dealing until it actually interfered with a Settlement Offer Plaintiff wanted to accept. Thus, Plaintiff's claims herein did not exist at the time of AMIC's intervention and cannot fall with the rule of compulsory counterclaims.

(*See* [Doc.11] at pp.28-29 of 31, emphasis in original.)

This interrogatory seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and is both overly broad and unduly burdensome in that it seeks information about the allegations in Plaintiff's Complaint – which expressly assert AMIC breached the insurance contract at issue and the duty of good faith and fair dealing when it "asserted its purported

subrogation interest and intervened in the Third Party Case" – despite the fact Plaintiff has now affirmatively represented to the Court that "[h]is claims *did not exist* at the time AMIC intervened in September 2012." If Plaintiff's claims did not exist in September of 2012, and if – as Plaintiff argues, though AMIC maintains this argument is flawed – Plaintiff's cause of action did not arise until on and after August 21, 2013, it is logically impossible that discovery regarding all the allegations in Plaintiff's Complaint can be relevant and it is also patently clear that this interrogatory is overly broad and unduly burdensome.

In addition, AMIC was represented by counsel at the time it appeared at the August 21, 2013, mediation and thereafter, and Plaintiff is clearly aware of who that counsel was. To the extent any response from AMIC is required to identify the attorneys who represented it during the litigation of the underlying tort case, AMIC refers Plaintiff to [Doc.7-6] at p.3 of 7. To the extent this interrogatory seeks the identification of the "subject matter" of the knowledge that any attorney who represented AMIC at any point during the life of Plaintiff's claim, AMIC objects on the grounds that information is protected by the attorney-client and/or work product privileges.

**INTERROGATORY NO. 11:** Set forth and describe the manner from which information is recorded, compiled, maintained and/or can be ascertained from your records concerning the utilization of any computer software claims adjusting program used by Defendant to adjust Oklahoma UM claims, the settlement range or ranges generated by said program and the amount paid by Defendant on said claims.

**ANSWER:** AMIC objects to Plaintiff's request for this information, as Plaintiff's claims are barred in that they are compulsory counterclaims that Plaintiff was required to assert in the underlying tort case and are barred by the principle of *res judicata*. Further, this interrogatory is vague and confusing as well as overly broad ... it appears Plaintiff is seeking a description of every piece of information that "concern[s]" the "utilization of any computer software claims adjusting program used by Defendant to adjust Oklahoma UM claims, the settlement range or ranges generated by said program and the amount paid by Defendant on said claims." In other words, Plaintiff seems to want a description of every piece of information regarding some hypothetical computer software program and every piece of information this hypothetical computer software program generated regarding the value of not only Plaintiff's claim but every claim paid by AMIC on any Oklahoma UM claim for all of eternity. As such, to the extent this interrogatory can be understood, it is also patently overly broad and unduly burdensome in that it seeks information, without temporal limitation, regarding every Oklahoma UM claim for which AMIC's hypothetical computer program ever generated any settlement range and/or every Oklahoma UM claim AMIC paid for which any hypothetical computer program was utilized by AMIC during the handling of that claim.

In addition, this interrogatory is a "discovery of discovery" or "discovery on discovery" interrogatory, which is disfavored by federal courts. More specifically,

13

it seeks information regarding how AMIC maintains information regarding this hypothetical computer software claims adjusting program despite the absence of evidence any such program exists or there being any indication AMIC has failed to provide sufficient responses to relevant, appropriate discovery requests regarding the hypothetical computer software program.

Further, the following facts are undisputed by Plaintiff: (1) the underlying accident occurred on July 6, 2012; (2) at the time of the underlying accident, Plaintiff was insured under a policy of insurance issued by AMIC to Guy's Seed which provided uninsured/underinsured motorist ("UM/UIM") coverage with a limit of $1,000,000; (3) Plaintiff's UM claim was reported to AMIC on July 9, 2012; (4) on September 24, 2012, AMIC tendered the full $1,000,000 UM/UIM limits provided by its policy to the representative of non-party William Cole Taylor's estate ("the Taylor Estate") and Plaintiff, and at Plaintiff's direction, this $1,000,000 was divided equally between Plaintiff and the Taylor Estate, and (5) "AMIC tendered payment in accordance with the parties' agreement," resulting in tender of $500,000 to Plaintiff pursuant to AMIC's September 12, 2012, tender. (*Compare* [Doc.7] at pp.6-7 of 23, ¶¶ 1, 2, 3, and 8 *to* [Doc.11] at p.7 of 31, ¶¶ 1-2.)  In addition, Plaintiff, in his Response to Defendant's Motion to Dismiss, stated as follows:

> Here, Plaintiff's allegations of bad faith and breach of contract against AMIC arise out of its conduct *at and after mediation* in August 2013 in asserting an interest in the Settlement Funds. His claims *did not exist* at the time AMIC intervened in September 2012. There *were* no Settlement Funds or Settlement Offer for AMIC to interfere *with* at the time of its intervention. It was not until the Tortfeasor made a Settlement Offer at mediation in excess of the liability limits, and AMIC interfered with that offer and asserted an interest in the Settlement Funds in the amount of $500,000 without substituting payment or consideration of contribution, that Plaintiff's claims asserted in his Complaint arose.
>
> \*   \*   \*
>
> ... As discussed above, the question in this case is whether it was *reasonable* for AMIC to assert an interest in the Settlement Funds *at and after mediation*, considering all the relevant facts and circumstances *as they existed at that time*. Those facts and circumstances did not exist until mediation, and AMIC did not breach its duty of good faith and fair dealing until it actually interfered with a Settlement Offer Plaintiff wanted to accept. Thus, Plaintiff's claims herein did not exist at the time of AMIC's intervention and cannot fall with the rule of compulsory counterclaims.

(*See* [Doc.11] at pp.28-29 of 31, emphasis in original.)

14

To be clear, AMIC maintains Plaintiff's attempt to characterize AMIC's acts at and after the August 21, 2013, mediation as a separate cause of action is flawed and should be rejected by the Court. (*See* [Docs. 7 and 18].) In the alternative, AMIC maintains that if the Court does find its litigation conduct at and after the August 21, 2013, mediation can form the basis of a separate cause of action, that cause of action should be barred under the principle of *res judicata*. *Id.* Plaintiff, however, is attempting to avoid dismissal by taking this position. Despite this, he now seeks discovery concerning information which – according to the theory he has espoused in the hopes of avoiding dismissal – is clearly neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and is patently beyond the temporal scope of the period Plaintiff now claims is the relevant temporal period.

There is no dispute AMIC paid Plaintiff's UM claim and by Plaintiff's own argument, the tender of UM benefits by AMIC on September 24, 2012, is not at issue in this matter. According to Plaintiff, AMIC's decision to seek subrogation is not at issue, nor is AMIC's decision to file its Petition in Intervention. Plaintiff has affirmatively argued to the Court that the only matters at issue in this lawsuit are AMIC's litigation conduct at and after the August 21, 2013, mediation. No hypothetical computer software claims adjusting program can be relevant to AMIC's litigation conduct at and after the August 21, 2013, mediation – a time during which AMIC was represented by counsel. Even if any such program existed, it would be confidential and proprietary, and information regarding it would be produced only pursuant to an appropriate protective order.

## CONCLUSION

Plaintiff has not specifically identified any discovery request at issue, has not met his burden of demonstrating the relevance of the information sought is readily apparent, and has not demonstrated how AMIC's objections are "boilerplate" in nature. If this Court elects to review AMIC's discovery responses, it will see that there are no "boilerplate" objections; each objection is supported by facts and explanation. As the alleged "boilerplate" nature of AMIC's objections is the only basis upon which Plaintiff asserts AMIC should be compelled to provide additional discovery responses, and as it is clear AMIC's objections are far from "boilerplate," AMIC respectfully requests Plaintiff's Motion to Compel be denied.

Respectfully submitted,

*s/ Dawn M. Goeres*
R. Thompson Cooper, OBA No. 15746
Dawn M. Goeres, OBA No. 21923
ROBERSON, KOLKER, COOPER & GOERES, P.C.
16408 Muirfield Place
Edmond, Oklahoma 73013
Telephone:   405-606-3333
Facsimile:   405-606-3334
Email:       tom@rkcglaw.com
             dawn@rkcglaw.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II, Esquire
Laura L. Hamilton, Esquire
Lawrence R. Murphy, Jr., Esquire

*s/ Dawn M. Goeres*
For the Firm