IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) MARK RAYMOND,

    Plaintiff,

v.

(1) AMERICAN MERCURY INSURANCE COMPANY,

    Defendant.

Case No. 20-cv-00122-JFH-CDL

## MOTION TO COMPEL

COMES NOW the Plaintiff, Mark Raymond, and asks the Court to compel Defendant American Mercury Insurance Company to respond to Mr. Raymond's discovery requests as set forth herein. Specifically, Mr. Raymond seeks an order compelling Defendant to respond to Plaintiff's Request for Production and to produce its **entire claim file** regarding Plaintiff's uninsured/underinsured motorist ("UM") claim. In support, Mr. Raymond states the following:

## COMPLIANCE WITH LCvR37.1

Mr. Raymond hereby certifies that counsel for the parties participated in several conferences regarding the issues raised herein, the most recent of which occurred on September 11, 2024. These conferences were conducted by both parties in good faith, but the parties were unable to reach an agreement on the issues identified herein, necessitating the instant motion.

## STATEMENT OF THE CASE

Mr. Raymond was seriously and permanently injured in a motor vehicle accident caused by the negligence of Larry Bedell while in the course and scope of Bedell's employment with BlueKnight Energy Partners, LP (collectively, "Tortfeasor"). Mr. Raymond was insured under a policy of uninsured/underinsured motorist insurance ("UIM") coverage written by Defendant at

the time of the accident. The Tortfeasor's primary liability coverage limits were $1,000,000.00, and the limits of the UIM policy were also $1,000,000.00. It is undisputed that the commercial energy company had assets beyond its liability coverage limits. Plaintiff sought benefits under the AMIC policy pursuant to *Burch v. Allstate*, 1998 OK 129, 977 P.2d 1057, and Defendant provided Mr. Raymond with $500,000.00 in UIM benefits. Because his loss clearly exceeded the $500,000 UIM benefits, Mr. Raymond proceeded against the Tortfeasor in Oklahoma State Court ("Third-Party Lawsuit"). Defendant intervened in the Third-Party Lawsuit in September 2012 asserting a right to subrogate against the Tortfeasor for the $500,000 it had paid.

Mr. Raymond vigorously litigated the Third-Party Lawsuit for over a year and eventually forced the Tortfeasor to mediation on August 21, 2013. Defendant was present at the mediation. At mediation, due to Mr. Raymond's vigorous litigation efforts, Mr. Raymond secured an agreeable Settlement Offer from the Tortfeasor that, when combined with the UIM benefits previously provided by Defendant, was sufficient to compensate him for his damages. The Settlement Offer exceeded the combined amount of the Tortfeasor's primary automotive liability insurance limits and the limits of Defendant's UIM policy. Defendant refused to waive its purported interest in the settlement funds and allow Mr. Raymond to accept the Settlement Offer. Instead, Defendant insisted it was entitled to reimbursement from the settlement amount for the entire $500,000.00 it had paid without any consideration of or contribution for the costs Mr. Raymond incurred in securing the Settlement Offer. Mr. Raymond was compelled to accept the Settlement Offer at mediation lest it be withdrawn.

Because Defendant refused to waive its purported subrogation interest, and because Defendant failed to substitute the Settlement Offer made by the Tortfeasor, Mr. Raymond had no choice but to accept the same subject to litigating Defendant's purported interest. Defendant

insisted that $500,000 of the total Settlement Funds be provided to its counsel and held in trust. Mr. Raymond vigorously disputed that Defendant had any interest in the Settlement Funds and consistently maintained that Defendant's assertion of such interest was unreasonable, inconsistent with established Oklahoma law, and a breach of its duty of good faith and fair dealing. The end result of the litigation was a final judgment determining that, in fact and as clearly established Oklahoma law dictated, Defendant did not have any valid interest in the settlement funds was rendered more than four (4) years after mediation. As a result of AMIC's wrongful and unreasonable assertion of an interest in the Settlement Funds to which it had no colorable interest, Mr. Raymond was forced to incur years of additional litigation and forced to go without the benefit of half a million dollars of his Settlement Funds during that entire period.

This bad faith lawsuit followed.

## **DISCOVERY REQUESTS AT ISSUE**

At issue in this motion are Mr. Raymond's discovery requests directed to obtaining Defendant's **entire claim file** relating to Mr. Raymond's UIM claim (RFP No. 2). Defendant has not produced any claim file documents prior to its assertion of the subrogation interest and asserted without any support that those documents are not relevant. However, the entirety of the claim is relevant to Mr. Raymond's bad faith claim and should therefore be produced.

## **SCOPE OF DISCOVERY**

It is well established that discovery under the Federal Rules is limited only by relevance and burden. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *see also, AG Equip. Co. v. AIG Life Ins. Co.*, 2008 U.S. Dist. LEXIS 99915 (Okla. N.D. 2008) ("At the discovery phase of litigation, 'relevancy' is broadly construed and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to

the claim or defense of any party."). Discovery is generally relevant and discoverable if it seeks information pertinent to allegations in the pleadings. *See*, Fed. R. Civ. P. 26(b)(1) (emphasis added).

## **ARGUMENT AND AUTHORITY**

**I.    MR. RAYMOND IS ENTITLED TO DEFENDANT'S ENTIRE CLAIM FILE RELATED TO HIS UM CLAIM (RFP NO. 2)**

**A. Plaintiff is entitled to the entire claim file for his UIM claim.**

In his first requests, Mr. Raymond requested that produce the entire claim file for his UIM claim:

> **REQUEST FOR PRODUCTION NO. 2:** Please produce Plaintiff's entire UM claim file(s), including but not limited to electronic data and activity logs, supervisor comments and analysis, file jackets and folders containing the files, communications between you and the Plaintiff or Plaintiff's representatives, and any and all internal documents of every type related to the adjustment of the Plaintiff's Claim. This shall also include, but not be limited to, any and all telephone slips, post-its, handwritten notes, e-mails, or other removable materials.

[Ex. 1: Defendant's Discovery Responses.] In response, Defendant cited its response to Request for Production No. 1 which states:

> Mercury maintains its original response to this Request for Production,[1] including objections. Subject to and without waiving said objections: See pertinent portions of Mercury's claim file relating to Plaintiff's allegations of bad faith and breach of contract at and after the August 2013 mediation, in asserting an interest in the settlement funds, bates stamped Def Mercury 000001 trough Def Mercury 000365.

[*Id.*] Defendant asserted that it would only produce the claim file relating the mediation and has not produced any claim files or notes originating prior to that, **including its evaluation of Mr. Raymond's underlying UIM claim**. Defendant is asserting that its evaluation of the UIM claim

---

[1]    Originally, Defendant objected to producing any documents while its motion to dismiss was pending. Defendant supplemented once the motion to dismiss was denied and new counsel took over the case.

is not relevant. However, its evaluation of the Mr. Raymond's injuries and claim, the valuation of his injuries, the third-party limits, and the decision whether to substitute payment goes to the heart of the bad faith allegations and claims here. Mr. Raymond is entitled to all documents reflecting Defendant's handling of Mr. Raymond's UIM claim, not just those surrounding the mediation.

The essence of the tort of bad faith is the insurer's unreasonable, bad faith conduct, including the unjustified withholding of payment due under a policy. *McCorkle v. Great Atlantic Ins. Co.*, 1981 OK 128, ¶ 22, 637 P.2d 583, 587; *see also Timberlake Constr. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995) ("'The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions.'") (quoting *Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, ¶ 8, 782 P.2d 1357, 1360). "[B]ad faith actions against an insurer…can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did." *Brown v. Superior Court in and for Maricopa County*, 670 P.2d 725, 734 (Ariz. 1983). **To decide a claim of bad faith, the jury must be shown "the entire course of conduct between the parties."** *Timmons v. Royal Globe Ins Co.*, 1982 OK 97, ¶ 33, 653 P.2d 901, 917 (emphasis added). Contemporaneously prepared documents relating to the insurer's handling of the claim, such as correspondence and the claim file, are **key** to this inquiry and the need for such information is "not only substantial, ***but overwhelming***." *Brown*, 670 P.2d at 734. (emphasis added); *see also Silva v. Fire Ins. Exchange*, 112 F.R.D. 699, 699 (D. Mont. 1986) ("Under ordinary circumstances, a first-party bad faith claim can be proved only by showing the manner in which the claim was processed, and the claims file contains the sole source of much of the needed information."). As *Timmons* instructs, because the entire course of conduct may be shown to the jury on a bad faith case, the Court must order that Defendant produce its entire claim file, not just the material it cherry picks. What Defendant's

agents were thinking and doing during the time Mr. Raymond's claim was being handled is material to Mr. Raymond's bad faith claim, and the entire claim file is the best evidence of that.

## CONCLUSION

WHEREFORE, premises considered, Mr. Raymond prays this Court compel Defendant to produce the requested withheld materials and for such further relief as Mr. Raymond may be entitled.

Respectfully submitted,

SMOLEN | LAW, PLLC

*/s/Dustin J. Vanderhoof*
Donald E. Smolen, II, OBA #19944
Dustin J. Vanderhoof, OBA #21388
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
dustin@smolen.law
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 11th day of November 2024, the foregoing was submitted to the Clerk of Court using the Court's ECF System for filing and for transmittal of a Notice of Electronic Filing to all counsel of record in this case.

*/s/Dustin J. Vanderhoof*