**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1) MARK RAYMOND,

Plaintiff,

v.

(1) AMERICAN MERCURY INSURANCE COMPANY,

Defendant.

Case No. 20-cv-00122-JFH-CDL

**PLAINTIFF'S MOTION FOR SANCTIONS, AND OPENING BRIEF IN SUPPORT**

COMES NOW the Plaintiff, Mark Raymond, and pursuant to the Court's inherent authority, asks the Court to sanction Defendant American Mercury Insurance Company and its counsel Pierce Couch Hendrickson Baysinger & Green, LLP for Defendant's failure to supplement documents relevant to this action timely – in particular, a coverage opinion letter written by a partner with Defendant's counsel regarding subrogation which goes to the very heart of Mr. Raymond's claims in this action. Defendant asserted an advice of counsel defense in responding to Mr. Raymond's claim that it committed bad faith by wrongfully asserting a subrogation interest in contravention of Oklahoma law. Despite asserting advice of counsel as a defense, Defendant and its counsel waited almost 17 months after asserting the defense to supplement and provide the opinion letter on subrogation. Now, following production of the letter after extensive delay, Defendant's counsel has indicated that it intends to withdraw because of the conflict created by the coverage opinion - causing additional significant delay. Respectfully, Defendant's obfuscation must stop, and this Court should impose sanctions to prevent further game-playing by Defendant and its counsel.

**STATEMENT OF THE CASE**

Mr. Raymond was seriously and permanently injured in a motor vehicle accident caused by the negligence of Larry Bedell while in the course and scope of Bedell's employment with BlueKnight Energy Partners, LP (collectively, "Tortfeasor"). Mr. Raymond was insured under an insurance policy with uninsured/underinsured motorist ("UIM") coverage written by Defendant at the time of the accident. The Tortfeasor's primary liability coverage limits were $1,000,000, and the UIM policy limits were also $1,000,000. It is undisputed that the commercial energy company had assets beyond its liability coverage limits. Mr. Raymond sought benefits under Defendant's policy pursuant to *Burch v. Allstate*, 977 P.2d 1057 (Okla. 1998), and Defendant provided Mr. Raymond with $500,000 in UIM benefits. Because his loss clearly exceeded the $500,000 UIM benefits, Mr. Raymond proceeded against the Tortfeasor in Oklahoma state court ("Third-Party Lawsuit"). Defendant intervened in the Third-Party Lawsuit in September 2012, asserting a right to subrogation against the Tortfeasor for the $500,000 it had paid Mr. Raymond.

Mr. Raymond vigorously litigated the Third-Party Lawsuit for over a year and eventually forced the Tortfeasor to mediation on August 21, 2013. Defendant was present at the mediation. At mediation, due to Mr. Raymond's vigorous litigation efforts, Mr. Raymond secured an agreeable settlement offer from the Tortfeasor that, when combined with the UIM benefits previously provided by Defendant, was sufficient to compensate him for his damages. The settlement offer exceeded the combined amount of the Tortfeasor's primary automotive liability insurance limits and the limits of Defendant's UIM policy. Defendant refused to waive its purported subrogation interest in the settlement funds to allow Mr. Raymond to accept the settlement offer. Instead, Defendant insisted it was entitled to reimbursement from the settlement amount for the entire $500,000 it had paid without any consideration of or contribution for the

costs Mr. Raymond incurred in securing the settlement offer. Mr. Raymond was compelled to accept the settlement offer at mediation lest it be withdrawn.

Because Defendant refused to waive its purported subrogation interest, and because Defendant failed to substitute the settlement offer made by the Tortfeasor, Mr. Raymond had no choice but to accept the settlement offer subject to litigating Defendant's purported interest. Defendant insisted that $500,000 of the total settlement funds be provided to its counsel and held in trust. Mr. Raymond vigorously disputed that Defendant had any interest in the settlement funds and consistently maintained that Defendant's assertion of a subrogation interest was unreasonable, inconsistent with established Oklahoma law, and a breach of its duty of good faith and fair dealing. The end result of the Third-Party Action was a final judgment (rendered more than four years after the mediation) determining that, in fact and as clearly established Oklahoma law dictated, Defendant did not have any valid interest in the settlement. As a result of Defendant's wrongful and unreasonable assertion of a subrogation interest in the settlement funds to which it had no colorable interest, Mr. Raymond was forced to incur years of additional litigation and forced to go without the benefit of half a million dollars of his settlement funds during that entire period. This bad faith lawsuit followed.

Following Mr. Raymond's filing of this action, Defendant has done all it can do to drag its feet on discovery, even after the Court ordered the parties to exchange and respond to discovery requests. Defendant's campaign of obfuscation has led to numerous scheduling order extensions and turned this litigation into a fiasco. The latest delay centers around its claim file and a coverage opinion Defendant's current counsel's office drafted for Defendant at the outset of the underlying Third-Party Lawsuit. In that letter, a partner with Defendant's counsel's firm opined about Defendant's assertion of a subrogation after payment of UIM benefits – **the exact wrongful act**

**at the heart of this bad faith lawsuit**. However, Defendant and its counsel sat on this letter **for years**. Defendant only produced the letter when this Court intervened and ordered production of the entire claim file, which Defendant had baselessly withheld. Immediately following production, Defendant's current counsel informed Mr. Raymond's counsel that it would be withdrawing from this action – which it still hasn't done – causing additional delay and prejudicing Mr. Raymond and this Court.

**FACTUAL BACKGROUND AND DEFENDANT'S CAMPAIGN OF OBFUSCATION**

1. Mr. Raymond filed this action on March 25, 2020. [Dkt. No. 2].

2. Defendant filed its Motion to Dismiss on April 28, 2020. [Dkt. No. 7].

3. On August 4, 2020, Mr. Raymond's counsel emailed Defendant's prior counsel to set up a conference under Fed. R. Civ. Pro. 26(f) so the parties could initiate discovery. [Ex. 1: 08/04/2020 Email from J. Warren.] The same day, Defendant's counsel responded that they would get back to Mr. Raymond's counsel on the request. [*Id.*] Defendant's counsel never got back to Mr. Raymond's counsel.

4. On October 7, 2020, Mr. Raymond's counsel again emailed Defendant's prior counsel to set up a conference under Fed. R. Civ. Pro. 26(f). [Ex. 2: 10/07/2020 Email from D. Vanderhoof.] Again, Defendant's prior counsel did not respond.

5. On October 28, 2020, Mr. Raymond filed his Motion for Leave to Conduct Discovery. [Dkt. No. 19.]

6. On December 3, 2020, Magistrate Judge Little held a hearing on Mr. Raymond's Motion for Leave to Conduct Discovery. Magistrate Judge Little granted Mr. Raymond's motion and ordered that the parties may exchange discovery. [Dkt. No. 24.]

7. On February 2, 2021, Mr. Raymond served his first discovery requests on Defendant. [Ex. 3: Requests.]

8. On April 21, 2021, Defendant served its responses. In its responses, Defendant refused to engage in discovery and refused to provide any substantive answers, citing the pending motion to dismiss. [Ex. 4: Responses.]

9. On May 6, 2021, Mr. Raymond filed his Motion to Compel. [Dkt. No. 27.] The same day, Defendant filed its Opposed Motion to Stay Discovery pending the Motion to Dismiss. [Dkt. No. 28.]

10. On June 14, 2021, the Court issued a stay of discovery pending a ruling on Defendant's Motion to Dismiss. [Dkt. No. 39.]

11. On November 3, 2021, the Court referred Defendant's Motion to Dismiss to Judge William Young. [Dkt. No. 41.]

12. On November 10, 2022, the Court set the Motion to Dismiss for hearing on December 19, 2022. [Dkt. No. 46.]

13. On December 19, 2022, the Court ultimately struck the hearing and denied Defendant's Motion to Dismiss. [Dkt. Nos. 48 and 49.]

14. On December 20, 2022, the Court held a status conference and requested a proposed case management schedule by January 15, 2023. [Dkt. No. 50.] The Court also lifted the stay on discovery. [*Id.*] The Court recommended that the parties set a dispositive motion deadline on March 15, 2023. [*Id.*]

15. On December 28, 2022, Mr. Raymond's counsel sent an email to Defendant's counsel asking that Defendant supplement its responses to Mr. Raymond's first discovery requests and provide responsive documents by January 10, 2023. [Ex. 5: 12/28/2022 Email from L.

Murphy.] Mr. Raymond's counsel also requested the deposition dates for Cynthia Kidd, the primary adjuster on the claim file. [*Id.*]

16. Defendant's counsel never responded to Mr. Raymond's counsel's email.

17. After not hearing from Defendant's counsel, Mr. Raymond's counsel sent a follow-up email on January 3, 2023. [Ex. 6: 01/03/2023 Email from L. Murphy.] Defendant's counsel again did not respond.

18. On January 13, 2023, counsel for the parties conferred telephonically regarding the proposed scheduling order requested by the Court. Mr. Raymond sent a proposed scheduling order to Defendant's counsel on January 15, 2023. [Ex. 7: 01/15/2023 Email from D. Smolen.]

19. Defendant's counsel did not want to sign off on Mr. Raymond's scheduling order and wanted to discuss the dispositive motion deadline. [Ex. 8: 01/17/2023 Email from T. Cooper.]

20. Defendant's counsel, citing the Court's discussion during a status conference, wanted a March 2023 dispositive motion deadline. However, Mr. Raymond's counsel made it clear they could not agree to that deadline without **Defendant's discovery and the deposition of Cynthia Kidd**. [Ex. 9: 01/17/2023 Email from D. Smolen.]

21. Because Mr. Raymond's counsel could not get an agreement on the proposed scheduling order or any response on the discovery issues, Mr. Raymond's counsel asked the Court for a status conference. [Ex. 10: 01/25/2023 Email from D. Vanderhoof.]

22. The Court set a status conference for January 26, 2023. [Dkt. No. 55.]

23. On January 26, 2023, the Court attempted to hold a status conference, but Defendant's counsel did not appear. [Dkt. No. 56.] However, the Court's clerk advised Mr. Raymond's counsel to submit his proposed scheduling order for consideration by the Judge.

24. On January 30, 2023, the Defendant's prior counsel withdrew, and Defendant's current counsel entered. [Dkt. Nos. 58 and 59.]

25. On April 17, 2023, Mr. Raymond's counsel sent an email to Defendant's counsel regarding Defendant's discovery responses. [Ex. 11: 04/17/2023 Email from D. Vanderhoof.]

26. On June 2, 2023, Defendant finally supplemented its discovery responses. [Ex. 12: Supplemental Responses.] However, Defendant did not include the entirety of its claim notes, nor did it produce its confidential documents pending the filing of a protective order.

27. On July 25, 2023, Defendant filed an amended answer asserting advice of counsel as a defense to its bad faith for wrongful subrogation. [Dkt. No. 76 at affirmative defense no. 12; Ex. 13: July 2023 Email Chain.]

28. On September 8, 2023, Defendant produced all purported documents related to the advice of counsel defense – communications and documents by and between its counsel in the Third-Party Lawsuit, Rhodes Hieronymus, and Defendant. [Ex. 14: 09/08/2023 Email from K. Wolfe.] **AT NO POINT DID DEFENDANT OR ITS PRESENT COUNSEL DISCLOSE THAT A PARTNER WITH DEFENDANT'S PRESENT COUNSEL WROTE AN OPINION LETTER TO DEFENDANT ADVISING ON THE RIGHT TO SUBROGATION.**

29. After a meet and confer on Defendant's supplemental responses, the parties sought and the Court entered a protective order for the remainder of Defendant's production. [Dkt. No. 88.] Defendant provided further supplemental production. However, Defendant did not produce the entire claim file for the underlying UIM claim.

30. Because Defendant refused to produce the entire underlying claim file, on November 11, 2024, Mr. Raymond filed a motion to compel. [Dkt. No. 99.]

31. On December 11, 2024, the Court held a hearing and ultimately granted the motion and compelled production of the claim file. [Dkt. No. 103.]

32. **During the hearing, Defendant's current counsel disclosed for the first time that a former partner of Defendant's current counsel, Stephen Olson, wrote a coverage opinion for Defendant addressing subrogation.**

33. Defendant's disclosure occurred nearly **17 months** after it asserted the advice of counsel defense.

34. On December 18, 2024, Defendant produced the opinion letter from its current counsel's office. The opinion letter specifically addressed Defendant's eventual wrongful subrogation. [Ex. 15: Opinion Letter.]

35. Following production of the opinion letter, Mr. Raymond's counsel informed Defendant's counsel that he wanted to take Mr. Olson's deposition. [Ex. 16: 01/08/2025 Email from D. Vanderhoof.]

36. During discussions of that deposition, Defendant's current counsel informed Mr. Raymond's counsel that it would be withdrawing. [*Id.*; Dkt. No. 104, ¶¶10-11.]

37. Over a month has passed, and Defendant's current counsel has not moved to withdraw as promised, nor has new counsel entered an appearance.

38. Defendant's and Defendant's counsel's wrongful withholding of the coverage opinion relevant to this lawsuit for nearly 17 months has severely delayed this case and caused irreparable prejudice to Mr. Raymond and this Court.

## ARGUMENT AND AUTHORITIES

A federal trial court has inherent authority to impose sanctions for abuse of the litigation process where a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."

*Chambers v. NASCO, Inc*., 501 U.S. 32, 45-46 (1991); *Steinert v. Winn Group, Inc*., 440 F.3d 1214, 1223 (10th Cir.2006). This Court has the inherent power to impose sanctions necessary to control and supervise its proceedings, promote judicial efficiency, deter frivolous filings, and respond to abusive litigation practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980); Mann v. Boatwright, 477 F.3d 1140, 1150 (10th Cir. 2007); *see also United States v. Evans & Assoc. Constr. Co.*, 839 F.2d 656, 660 (10th Cir. 1988). Similar to a court's power under Rule 11, a court's inherent power to sanction may include outright dismissal of a lawsuit, an assessment of attorneys' fees, or the imposition of filing restrictions. *See Chambers*, 501 U.S. at 45 ("As we recognized in *Roadway Express*, outright dismissal of a lawsuit, which we had upheld in Link, is a particularly severe sanction, yet it is within the court's discretion. Consequently, the less severe sanction of an assessment of attorney's fees is undoubtedly within a court's inherent power as well.") (internal citations omitted); *Sieverding v. Colo. Bar Ass'n*, 469 F.3d 1340, 1343 (10th Cir. 2006) ("Federal courts have the inherent power 'to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.'") (internal citation omitted). "Both parties and counsel may be held personally liable for expenses, 'including attorney's fees,'" as sanctions. *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996)

Included within the Court's inherent authority is the ability to impose sanctions related to bad faith discovery misconduct. *Atlas Res., Inc. v. Liberty Mut. Ins. Co.,* 291 F.R.D. 638, 643 (D.N.M. 2013) ("discovery-related sanctions are generally permissible to protect the integrity of the judicial process"); *LaJeunesse v. BNSF Ry. Co*., 333 F.R.D. 649, 672 (D.N.M. 2019) ("The Court is vested with the authority to impose sanctions, including involuntary dismissal, for a party's failure to comply with the discovery requirements set by local and federal procedural rules."). Sanctions imposed under this authority aim to penalize bad actors and deter those who might be

tempted to flout the rules or abuse the judicial process. *LaJeunesse*, 333 F.R.D. at 649, 672 (citing *National Hockey League v. Met. Hockey Club, Inc*., 427 U.S. 639, 643 (1976)).

Conduct amounts to “bad faith” if it shows “‘intentional or reckless disregard’ of the rules.” *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1300–01 (D. Utah 2016) (citing *Rhodes v. LaSalle Bank, N.A.,* 02 C 2059, 2005 WL 281221, at *2 (N.D. Ill. Feb. 1, 2005) (quoting *Marrocco v. General Motors Corp*., 966 F.2d 220, 224 (7th Cir. 1992)). However, actual ill will is not required; "substantial and prejudicial obduracy" or conduct that delays or disrupts the litigation can be enough. *Id.* (citing *Arnold v. Cnty. of El Dorado*, No. 2:10–cv–3119 KJM GGH PS, 2012 WL 3276979, at *3 (E.D. Cal. Aug. 9, 2012); *Eagle Hosps. Physicians, LLC v. SRG Consulting, Inc.*, Civil Action No. 1:04-CV-1015-JOF, 2007 WL 2479290, at *3 (N.D. Ga. Aug. 28, 2007). And “fault” concerns “‘the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation.’” *Id.* (citing *Rhodes*, 2005 WL 281221, at *2 (quoting *Marrocco*, 966 F.2d at 224)). “Applying these factors, courts presume bad faith and prejudice where a party gave ‘perjurious answers during a deposition and in interrogatory responses,’ created false evidence or testimony, [or] altered, destroyed, or **failed to produce documents ‘it knows or reasonably should know are relevant**’ to the case.” *Rhodes,* 2005 WL 281221, at *3 (internal citations omitted) (emphasis added).

In addition to the Court’s inherent authority, the Court has authority to sanction Defendant under Fed. R. Civ. Pro. 37(c). Under Fed. R. Civ. Pro. 37(c)(1) the Court can sanction a party for failure to supplement its discovery responses under Fed. R. Civ. Pro. 26(e) and: “(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).” Under Fed. R. Civ. Pro. 26(e), a party must

supplement "in a timely manner" its discovery responses if the responses are "incomplete or incorrect." The Tenth Circuit has applied four factors to determine whether sanctions should be imposed for a failure to timely supplement. Those factors are as follows: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999).

In this case, Defendant's (and its counsel's) bad faith litigation conduct is readily apparent. Defendant and its counsel have done everything they can to throw roadblocks in the discovery process. They have not provided dates for Defendant's adjuster's deposition despite numerous requests. They have refused to produce relevant documents (re the entire claim file [Dkt. No. 99.]). Their latest behavior is by far the worst. In its amended answer filed in July 2023, Defendant asserted a defense of advice of counsel (without any specification of counsel) as to Mr. Raymond's claims that Defendant wrongfully asserted a subrogation interest on the Third-Party settlement funds. At that moment, any opinions or communications regarding the subrogation interest were naturally relevant. Mr. Raymond asked for the documents in discovery. [Ex. 3: Requests at Interrogatory No. 4 ("identify all document that evidence the basis for" subrogation); Interrogatory No. 6 (seeking affirmative defenses); RFP No. 2 (entire claim file).] Despite multiple chances to supplement, neither Defendant nor its counsel disclosed the existence of Mr. Olson's opinion. Defendant kept the document hidden. Defendant and its counsel refused to produce the entire claim file until ordered by the Court 17 months after it asserted the advice of counsel defense (and after it originally supplemented its responses). Defendant's refusal to produce or even disclose Mr. Olson's opinion on subrogation can only be described as bad faith. *Rhodes,* 2005 WL 281221, at

*3. Defendant's 17-month delay in producing relevant discovery prejudices Mr. Raymond, but most importantly, this Court. This prejudice is exacerbated because Defendant's counsel acknowledge they will now be forced to withdraw (which has not happened a month after this promise) – causing additional delay.

Because of Defendant's and its counsel's bad faith litigation tactics, Mr. Raymond has incurred and will continue to incur significant attorney time and expense. Therefore, Mr. Raymond requests that this Court impose sanctions, including but not limited to striking Defendant's affirmative defenses and paying Mr. Raymond's attorney fees and costs for (1) filing this motion and the other discovery motions and (2) taking the depositions of Mr. Olson, the late disclosed witness, and Ms. Kidd, the adjuster Defendant continues to refuse to present.

## CONCLUSION

Based on the foregoing, Mr. Raymond respectfully submits that this Court should sanction Defendant and its counsel to deter ongoing and future misconduct.

Respectfully submitted,

SMOLEN | LAW, PLLC

*/s/Dustin J. Vanderhoof*

Donald E. Smolen, II, OBA #19944
Dustin J. Vanderhoof, OBA #21388
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
dustin@smolen.law
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 11th day of February 2025, the foregoing was submitted to the Clerk of Court using the Court's ECF System for filing and for transmittal of a Notice of Electronic Filing to all counsel of record in this case.

*/s/Dustin J. Vanderhoof*