# PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P.

CLAYTON B PIERCE (1889-1981)
JOHN R. COUCH (1915-1993)
CALVIN W HENDRICKSON (1921-2001)
JAMES B DURANT (1935-2004)
HUGH A. BAYSINGER (1938-2012)

GERALD P. GREEN
STEPHEN L. OLSON
D. LYNN BABB
INONA JANE HARNESS
RUSSELL L. HENDRICKSON

JOHN ROGER HURT
CHARLES A. BRANDT
ROBERT S. LAFFERRANDRE
J. CHRIS CONDREN
PETER L. WHEELER
TODD A. ESTES
MALINDA S MATLOCK
DANIEL J HOEHNER
ELIZABETH R. SHARROCK
JERROD S. GEIGER
RANDALL J. WOOD
MARK E. HARDIN

ESTABLISHED 1923
CLAYTON B. PIERCE MEMORIAL BUILDING
1109 N. FRANCIS AVE.
OKLAHOMA CITY, OKLAHOMA 73106-6813
[MAIL: P.O. BOX 26350 OKLA. CITY, OK 73126-0350]
www.piercecouch.com
TEL: (405) 235-1611
FAX: (405) 235-2904

±ROBERT L. BETTS
SHANNON E. BICKHAM
CRISTI L. BULLARD
DANIEL J. CARD
SETH D. COLDIRON
^TIFFANY L. GRANT
KARI Y. HAWKINS
± ERIC A. JACOCKS
• JOHN C. LENNON
JEFFREY D. NACHIMSON
NATE R. NEBERGALL
ROBERT P. POWELL
MATTHEW C. RUSSELL
BENJAMIN SAUNIER
J. R. SCHNEIDER

AMANDA K. SMALLWOOD
KIMBERLY A. STEVENS

^Also Admitted in Colorado
±Also Admitted in Texas
•Also Admitted in New York
• Also Admitted in Missouri

OF COUNSEL
ANGELA O. REINSTEIN
JASON A. ROBERTSON
• AMY BRADLEY-WATERS

TULSA
601 South Boulder
11th Floor
Tulsa, Oklahoma 74119
TEL. (918) 583-8100
FAX: (918) 583-8107

September 14, 2012

**Via email: cmkidd@mercuryinsurance.com**
Cynthia Kidd
Mercury Insurance Group
P.O. Box 725530
Oklahoma City, OK 73172-5530

Re: Claim No.: 109745
Date of Loss: 7/6/12
Named Insured: Guy's Seed Company
UM Claimants: William Cole Taylor
Mark Raymond

---

Dear Ms. Kidd:

Pursuant to your request, and the materials furnished, this shall serve as my assessment of accident liability, and UM exposure.

## LIABILITY FOR ACCIDENT

This accident occurred July 6, 2012 at the intersection of U.S. Highways 64 and 283, approximately seven miles north of Laverne, Oklahoma. The accident occurred at approximately 4:30 p.m. It was daylight; weather conditions were unremarkable; the terrain was flat; visibility was good for all drivers; and there were no obstructions to visibility at the accident site.

Your insureds' employees were driving a pickup truck (1996 Dodge 350) eastbound on U.S. Highway 64, approaching the intersection with U.S. Highway 283. William Cole Taylor was driving, with Mark Raymond as a passenger. Larry Bedell, driving a large truck (diesel tanker) was westbound on U.S. Highway 64, and initiated a left-hand turn in an effort to go south on U.S. Highway 283, whereupon William Cole Taylor (driving the 1996 Dodge 350 pickup) hit his brakes leaving approximately 140 feet of skid marks before colliding with the Bedell truck passenger side fuel tank, causing it to rupture, ignite and both vehicles then caught on fire. At that time, the opposing driver, Larry Bedell, exited his vehicle with a fire extinguisher, held the flames at bay, and helped Mark Raymond out of

C. KIDD
SEP 17 2012
CLAIMS

the 1996 Dodge pickup truck. The fire extinguisher exhausted before he could reach the driver, William Cole Taylor, who was critically injured and pinned in the burning vehicle, resulting in his death.

According to the accident report, the opposing driver, Larry Bedell, advised the investigating trooper that although he looked he did not see your insured's oncoming vehicle, and then by way of explanation, indicated why he may have been distracted – Larry Bedell said he was looking at a truck that was stopped at the intersection for a stop sign, facing northbound, because Larry Bedell wanted to make sure that he cleared the stopped truck while making his turn.

This appears to be a complete case of liability as against the opposing driver, Larry Bedell, who turned left in front of your insured's pickup truck; and the skid marks left by your insured's pickup truck are consistent with traveling well within the speed limit (65 mph limit). Per the trooper's accident report there was no way that your insured's driver (William Cole Taylor) could avoid the collision. The investigating trooper cited the opposing driver for making an unsafe, improper turn. I believe it highly unlikely that even a small degree of negligence could be placed upon your insured driver, William Cole Taylor, under the theory that he could have kept a better lookout, began braking sooner, and thereby avoid the accident. In my opinion, the accident was clearly caused by the actions of the opposing driver, Larry Bedell. As Larry Bedell's liability is clear, I see no reason to retain the services of an accident reconstructionist to look into this matter.

**INJURY EVALUATIONS**

The injury claims to the two UM insureds – William Cole Taylor (deceased) and Mark Raymond clearly exceed the $1,000,000 CSL limits by a significant margin.

With respect to William Cole Taylor, deceased, he was 29 years of age, and his survivors include a wife and child (not yet 2 years of age). Although my file materials did not contain information concerning Mr. Taylor's income, he would have had a work life expectancy of approximately 31 years. Assuming a modest income of $20,000 per year and assuming a fair rate of return between 2% - 5%, present value of lost wages would be in the range of $312,000 to $458,000; and if his income was $30,000 a year, the range would be $467,000 to $688,000. [These calculations are based on a future damage calculator published by Lawyers & Judges Publishing Co.]. This calculation does not take into account raises or increases in income during his working career, so these numbers are very conservative. In a wrongful death case, you may also consider the decedent's pain and suffering before he passed away. As Mr. Taylor was injured and trapped in the burning vehicle, if he was conscious before burning to death, that would be worth a significant amount, possibly in the range of $100,000 - $200,000. Then, in addition to that, the grief and loss of companionship of his widow and young son are to be considered, and those elements would probably be conservatively worth another $750,000 - $1,000,000. So at this time my rough, yet conservative estimate of the damages for the wrongful death of William Cole Taylor would be in the range of $1,162,000 to $1,658.000.

---

With respect to passenger Mark Raymond, he also sustained significant injuries. His left ear was amputated; he had a right forearm fracture; bilateral hip fractures; multiple rib fractures on the left and right; a right thumb fracture; an exposed tendon on the right hand; a left elbow joint fracture; and burns to the forehead, arms and legs with 3 fingertips burned off. He was taken by ambulance to a local hospital, then medi-flighted to OU Medical Center. While I do not have a calculation of all of his medicals, it appears the air ambulance alone was $33,000; and the OU hospital bill was some $436,000. Oklahoma's recent tort reform caps Mr. Raymond's non-economic damages at $350,000, but its constitutionality will be challenged by Plaintiff's bar at some point, so this may or may not be a hard cap. Anticipating that not all medical bills are accounted for, and that there is a likelihood of significant future medicals, and that Mr. Raymond will have a significant loss of earnings capacity claim, I'd estimate Mr. Raymond's injury claim could easily be in the range of $1,000,000 - $1,500,000, even if the non-economic damages cap is enforceable.

## UM SUBROGATION

It is my understanding the tortfeasor driver's employer had primary coverage in the amount of $1,000,000 with an excess policy of $10,000,000. Under Oklahoma law, a UM carrier may only consider the primary coverage of a tortfeasor in determining whether UM coverage is triggered. Since the combined injury claims of Mercury's UM insureds (William Cole Taylor and Mark Raymond) exceed the tortfeasor driver's primary limits, UM coverage is triggered. However, Mercury does have subrogation rights, and in this case, it appears there will be sufficient liability insurance available (due to the excess liability policies carried by the tortfeasor's employer) which should allow Mercury to recoup any UM payments made.

Since these UM claims exceed the UM limits, I recommend that you contact the attorneys for the UM claimants and see if they can agree on a split of the $1,000,000 CSL limits. Given the extent of the liability coverage limits ($11,000,000), your UM insureds should then be able to pursue the balance of their damages from the tortfeasor (as should American Mercury on its UM subrogation claim).

Should you have any questions, please do not hesitate to contact me.

Yours very truly,

PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.

Stephen L. Olson

SLO/tam